Jose TAVERAS, Petitioner,

v.

Joseph T. SMITH, Superintendent, Shawangunk Correctional Facility, Respondent.

No. 03 Civ. 1875(SHS).

United States District Court, S.D. New York.

Sept. 13, 2005.

BLS Legal Services, Inc., Prof. Ursula Bentele, Brooklyn Law School, of Counsel; Danielle Feman, Alex Lesman, Alexander Ryley, Law Interns, Brooklyn, NY, for Petitioner.

Morrie Kleinbart, Assistant District Attorney, New York City, for Respondent.

*OPINION & ORDER*

STEIN, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1), this Court accepts Magistrate Judge Gorenstein's thoughtful Report and Recommendation dated January 6, 2005 for the reasons set forth therein. In that Report and Recommendation, Judge Gorenstein concluded that this Court should grant the petition of Jose Taveras, brought pursuant to 28 U.S.C. § 2254, because the decision of the New York State Appellate Division, First Department, to deny Taveras counsel for his criminal appeal was contrary to clearly established U.S. Supreme Court law. Accordingly, the Court grants Taveras' section 2254 petition on that ground. However, the Court writes especially to take account of a newly discovered document that further supports the conclusion reached by Judge Gorenstein.

Taveras was tried in absentia in New York State Supreme Court, New York County, and convicted on June 7, 1988 of two counts of murder in the second degree, and one count each of attempted murder in the second degree, criminal possession of a weapon in the third degree, and bribery in the second degree. (Report and Recommendation dated Jan. 6, 2005 at 260–61). He was sentenced, also in absentia, to two concurrent prison terms of 25 years' to life imprisonment for the murder convictions, a concurrent term of 8–and–one–third to 25 years' imprisonment for the attempted murder conviction, a concurrent term of one year's imprisonment for the weapons possession conviction, and a consecutive term of 5 to 15 years' imprisonment for the bribery conviction. (Notice of Appeal dated June 29, 1988, Ex. B to Mem. of Law in Supp. of a Pet, for a Writ of Habeas Corpus). That sentence was executed in 1997, after Taveras had been apprehended on other charges and re-turned to state court. (Report and Recommendation dated Jan. 6, 2005 at 260–61).

Taveras subsequently appealed his conviction to the Appellate Division, First Department, and on March 22, 2001 that court dismissed his appeal without appointing counsel. (Order dated March 22, 2001, Ex. E to Mem. of Law in Supp. of a Pet. for a Writ of Habeas Corpus). Taveras then brought this petition pursuant to 28 U.S.C. § 2254, urging that he was denied the right to counsel for his as of right appeal of his criminal conviction in violation of the Sixth Amendment to the United States Constitution. As set forth in the Report and Recommendation, Judge Gorenstein concluded that the Appellate Division's failure to appoint appellate counsel for Taveras violated Taveras' Sixth Amendment rights in a manner that was contrary to clearly established federal law.

Respondent objected to Judge Gorenstein's Report and Recommendation on two grounds. First, "that petitioner had failed to justify his request for poor person's relief by filing an affidavit detailing his entitlement to relief." (Objections to Magistrate Gorenstein's Report and Recommendation dated March 4, 2004 at 17; *see id.* at 17–19). Because petitioner had not filed an affidavit of indigency with the state court pursuant to N.Y. C.P.L.R. § 1101, respondent urged, the state was not required constitutionally to provide him appellate counsel, and therefore his section 2254 petition should be dismissed. (*Id.; see also* Answer and Exhibits in Opp'n to a Petition for a Writ of Habeas Corpus dated Aug. 11, 2003 ¶ 21). Second, respondent urged that even if Taveras had filed an affidavit of indigency, the fugitive disentitlement doctrine permitted the state court to dismiss Taveras' appeal without assigning counsel.

In response to the former objection, petitioner for the first time provided the

Court a copy of an "Affidavit to Proceed In Forma Pauperis and for Assignment of Counsel." That document bears the date and time stamp of the Appellate Division, First Department, and is marked "Received" by that court on June 10, 1998—the time at which Taveras sought counsel to prosecute his appeal before the Appellate Division. (Affidavit to Proceed In Forma Pauperis and for Assignment of Counsel, Ex. 1 to Mem. of Law in Resp. to Obj. to Report and Recommendation dated Apr. 8, 2005).

In the affidavit of indigency, filed pursuant to N.Y. C.P.L.R. § 1101, Taveras sets forth that he has "no real property, bank accounts, or any source of income," (*id.* ¶ 6), and thus is "unable to pay the cost, fees and expenses necessary to prosecute this criminal appeal proceeding," (*id.* ¶ 5), and "desires that [the Appellate Division] assign suitable counsel," (*id.* ¶ 6). Taveras' current counsel opined that this document was not part of the state court file because "in the extensive correspondence between the Clerk of the Appellate Division and Petitioner over the years, at some point the original affidavit was sent back to [Taveras] inadvertently." (Mem. of Law in Resp. to Obj. to Report and Recommendation dated Apr. 8, 2005 at n. 1). Respondent has not offered any other explanation for the late appearance of petitioner's affidavit of indigency. That affidavit bears a First Department date and time stamp and "Received" notation, and its authenticity has not been questioned.

Because Taveras in fact did file an affidavit of indigency with the state court, this Court rejects respondent's objection that Taveras was not entitled to appellate counsel because he failed to file such an affidavit.[1] Respondent's sole other objection—

that the fugitive disentitlement doctrine allowed the state court to dismiss Taveras' criminal appeal without assigning counsel—is also rejected for the reasons ably set forth by Judge Gorenstein.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1) this Court accepts Judge Gorenstein's Report and Recommendation dated January 6, 2005. Taveras shall be released from custody unless within 60 days of the entry of judgment in this matter his direct appeal to the Appellate Division, First Department, is reinstated and—if he satisfies that court as to his indigency—appellate counsel is appointed to represent him. Thereafter, his appeal shall proceed expeditiously.

## *REPORT AND RECOMMENDATION*

GORENSTEIN, United States Magistrate Judge.

Jose Taveras brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment of conviction entered by the Supreme Court of the State of New York in New York County. Because he was a fugitive, Taveras was tried *in absentia* by a jury, which found him guilty of two counts of Murder in the Second Degree, one count each of Attempted Murder in the Second Degree, Criminal Possession of a Weapon in the Fourth Degree, and Bribery in the Second Degree. He was sentenced, also *in absentia*, to imprisonment of 30 years to life. More than nine years after his conviction, Taveras was returned to custody following his arrest on other charges and his sentence was executed.

Taveras's trial attorney had filed a notice of appeal from the original conviction

---

1. Even if the Court were to disregard the affidavit of indigency, the Court's conclusion would be the same for the reasons set forth in the Report and Recommendation at pages 271 through 274.

that the Appellate Division considered to be still pending at the time Taveras's sentence was executed. Nonetheless, the Appellate Division refused to appoint Taveras appellate counsel and dismissed his appeal, apparently relying upon the fugitive disentitlement doctrine. Taveras filed a petition for a writ of habeas corpus *pro se* challenging his conviction. At the request of this Court, Professor Ursula Bentele, director of a clinic at Brooklyn Law School that provides representation in habeas corpus cases, agreed to represent Taveras on a *pro bono* basis with the assistance of law students.

As described in detail below, Taveras's petition for a writ of habeas corpus should be granted because New York State denied Taveras his constitutionally guaranteed right to counsel on appeal from a criminal conviction—a right that exists in those instances where a state affords such appeals as of right. Taveras's right to counsel on appeal was not obviated simply because Taveras had previously been a fugitive. As a result, Taveras is entitled to release from custody unless New York State affords Taveras a counseled appeal to the Appellate Division.

## I. *BACKGROUND*

### A. *Pre-Trial Proceedings and Trial in Absentia*

Taveras was indicted on November 29, 1984 for two counts of Murder in the Second Degree, and one count each of Attempted Murder in the Second Degree, Criminal Possession of a Weapon in the Third Degree, and Bribery in the Second Degree. *See* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed March 18, 2003 (Docket # 1) ("Petition"), at 4; Affirmation in Support of People's [Cross] Motion [to Dismiss Appeal] and in Opposition to Defendant's Motion, dated February 7, 2001 ("Cross Motion Aff.") (reproduced as Ex. F to Answer, filed August 12, 2003 (Docket # 8) ("Answer")) ¶ 3. After spending more than a year in custody, he was released on his own recognizance. Reply, dated October 3, 2003 ("Pet. Reply I"), at 2; Affidavit in Support of Motion for Appointment of Counsel, dated August 22, 2003 ("Pet.Aff.") ¶ 5.

After a number of court conferences, Taveras's trial was scheduled to begin on May 16, 1988. *See* Petition at 5, Pet. Aff. ¶ 9, Pet. Reply I at 3. Because Taveras failed to appear on that date, a bench warrant was issued. Answer ¶ 6. In addition, the trial court held a hearing pursuant to *People v. Parker*, 57 N.Y.2d 136, 454 N.Y.S.2d 967, 440 N.E.2d 1313 (1982) (setting forth the procedures that must be followed before a defendant can be tried *in absentia*), and determined that the trial could proceed without Taveras's being present. *See* Answer ¶ 7; Cross Motion Aff. ¶ 10 & n. 3. Taveras was tried *in absentia* and convicted on June 7, 1988 of two counts of Murder in the Second Degree, one count of Attempted Murder in the Second Degree, Criminal Possession of a Weapon in the Fourth Degree, and Bribery in the Second Degree. Answer ¶ 8. On June 29, 1988, he was sentenced *in absentia* to two concurrent prison terms of 25 years to life on the murder convictions, a concurrent term of 8–1/3 to 25 years on the attempted murder conviction, a concurrent term of one year on the weapons possession conviction, and a consecutive term of 5 to 15 years on the bribery conviction. *Id.*

### B. *Taveras's Return to Court, Direct Appeal, and First Habeas Petition*

In December 1997, following his arrest and guilty plea on other charges, Taveras was returned to state court on the 1988 bench warrant and his sentence was exe-

cuted. *See* Pet. Aff. ¶ 11; Answer ¶¶ 11–12. On February 13, 1998, Taveras moved for an extension of time to file a notice of appeal. Pet. Aff. ¶ 12; Answer ¶ 13. This motion was denied by the Appellate Division on June 16, 1998. *See* Order, dated June 16, 1998 (reproduced as Ex. B to Answer). Taveras's motion to reargue this ruling was denied by summary order two years later. *See* Order, dated July 20, 2000 (reproduced as Ex. E to Answer).

On September 11, 2000, Taveras filed a *pro se* petition for a writ of habeas corpus in the Southern District of New York alleging that he had been denied his Fifth and Fourteenth Amendment rights to appeal his conviction in state court. *See Taveras v. Portuondo*, 2001 WL 705850, at *1 (S.D.N.Y. June 13, 2001) (Report and Recommendation), *adopted by* Order, filed July 20, 2001 (Docket # 8 in 00 Civ. 8176) ("July 20 Order"). In the course of preparing a response to Taveras's petition, the respondent discovered that a notice of appeal had in fact been filed by Taveras's trial counsel immediately after Taveras's sentencing (for which Taveras had not been present). *See* Notice of Appeal, dated June 29, 1988 (reproduced as Ex. B to Memorandum of Law in Support of Petition for a Writ of Habeas Corpus, filed February 27, 2004 (Docket # 13) ("Pet. Mem.") and as Ex. A to Answer). After the respondent informed the Appellate Division of this fact, the Deputy Clerk of the Appellate Division advised Taveras that the court intended to treat his two prior applications and a communication to the court dated May 11, 2000 requesting an extension of time to file a notice of appeal as a motion to proceed as a poor person and for the assignment of counsel. *See* Letter to Jose Taveras from David Spokony, dated January 23, 2001 ("Spokony Letter") (reproduced as Ex. C to Pet. Mem.).

On February 7, 2001, the District Attorney's Office filed a cross-motion to dismiss Taveras's appeal. *See* Notice of People's Motion to Dismiss Appeal, dated February 7, 2001 (reproduced as Ex. D to Pet. Mem. and as Ex. F to Answer). Its argument, as reflected in its memorandum of law, consisted of two parts: that Taveras's fugitive status required that the appeal be dismissed, Memorandum of Law in Opposition to Defendant's Motion, dated February 7, 2001 ("Cross Motion Mem.") (reproduced as Ex. D to Pet. Mem. and Ex. F to Answer), at 10–17, and that the notice of appeal was untimely under state law principally because the original notice of appeal was not authorized by Taveras, *id.* at 17–22. The accompanying affirmation also stated that Taveras's "poor person application" should be denied based upon the fugitive disentitlement doctrine, Cross Motion Aff. ¶ 26, and because Taveras had not filed a "detailed, notarized affidavit" as to his finances, *id.* ¶ 27.

Taveras—who was of course proceeding *pro se* and who asserts that he does not speak English, *see* Petition at 5—did not respond to the People's motion and states that he was never "informed as to when a Brief was due." *See* Letter to the Hon. Judith Kaye from Jose Taveras, dated June 29, 2001 ("June 2001 Letter to Ct. of App.") (reproduced as Ex. F to Pet. Mem. and as Ex. K to Answer), at 2.

On March 22, 2001, the Appellate Division, First Department, issued an order stating in its entirety as follows:

An order of this Court having been entered on June 16, 1998 denying defendant's motion for an extension of time in which to file a notice of appeal from the judgment of the Supreme Court, New York County, rendered on or about June 29, 1988, and for leave to prosecute the appeal as a poor person, assignment of counsel, and related relief,

And a further order of this Court having been entered on July 20, 2000 denying defendant's motion for reargument/renewal of this Court's order entered on June 16, 1998,

Now, upon the Court's own motion, reconsideration of the aforesaid orders of this Court is granted and, upon reconsideration, defendant's motion, insofar as it seeks leave to file a late notice of appeal, is denied as unnecessary, a timely notice of appeal from the aforesaid judgment having been duly filed by trial counsel on defendant's behalf; and, insofar as it seeks leave to prosecute the appeal as a poor person and for assignment of counsel, the motion is denied.

And respondent having moved for an order dismissing the appeal,

Now, upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon,

It is ordered that the motion is granted and the appeal is dismissed.

Order, dated March 22, 2001 ("App.Div.Decision") (reproduced as Ex. E to Pet. Mem. and as Ex. G to Answer) (internal citations omitted).

Thereafter, Magistrate Judge Ronald L. Ellis issued a Report and Recommendation on Taveras's September 2000 federal habeas petition. *Taveras,* 2001 WL 705850. Judge Ellis recommended that Taveras's claim that he was denied his right to appeal his conviction be denied because no federal constitutional right was implicated and, in any event, the claim was moot given that Taveras was afforded an appeal on March 22, 2001 when the Appellate Division determined that his notice of appeal had been timely filed. *Id.* at *3. Judge Ellis found, however, that Taveras's claim that he was denied the right to appellate counsel was unexhausted and recommended that it be dismissed to allow Taveras the opportunity to exhaust the claim in the state courts. *Id.* at *4–*5. By unpublished order, Judge Sidney H. Stein adopted the Report and Recommendation, dismissing Taveras's petition without prejudice to its renewal after the exhaustion of state remedies. *See* July 20 Order.

Thereafter, Taveras wrote to the New York Court of Appeals seeking leave to appeal the Appellate Division's March 22, 2001 order. June 2001 Letter to Ct. of App. Included in his letter was the following:

> [T]here was no adherence to the established procedures for an appeal. I was not given an Attorney nor was I even informed as to when a Brief was due. That was no appeal at all and I contend that I am entitled to a Direct Appeal in accordance with the law. It should be noted that the courts have held that an appellant has a right to counsel for that appeal and that no appeal can issue without said counsel.... There was no opportunity for me to defend against the charges [that I fled the jurisdiction] as I am entitle[d] to as a matter of due process.

*Id.* at 2. A few weeks later, Taveras submitted to the Court of Appeals a motion for leave to file a late "notice of appeal"— presumably referring to a late application for leave to appeal—in which he stated:

> [T]o dismiss the appeal without having followed nor allowed any of the established procedures for such an appeal is clearly a distinct denial of due process. The petitioner was denied counsel as he was also denied even a scheduling order to file a brief.... *Evi[t]ts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 [(1985)] ... specifically held that due process requires effective assistance of counsel for the first appeal. Counsel was denied in the instant matter as was

every other aspect of the procedures for such an appeal.

Motion for Leave to File a Late Notice of Appeal, dated July 23, 2001 ("July 2001 Letter to Ct. of App.") (reproduced as Ex. H to Answer), at 2. The People opposed Taveras's application. *See* Affirmation in Opposition to Defendant's Motion to File a Late Notice of Appeal, dated August 7, 2001 (reproduced as Exhibit I to Answer).

On September 6, 2001, the Court of Appeals granted Taveras's motion to file a late application for leave to appeal, treating his papers as timely under N.Y.Crim. Proc. L. § 460.20. *See* Order, dated September 6, 2001 (reproduced as Ex. G to Pet. Mem. and as Ex. J to Answer). The People thereafter opposed Taveras's application for leave to appeal. *See* Letter to the Hon. Carmen Beauchamp Ciparick from Nicole Beder, Assistant District Attorney, dated October 10, 2001 (reproduced as Ex. L to Answer). By summary order dated December 18, 2001, the Court of Appeals denied leave to appeal. *See* Certificate Denying Leave, dated December 18, 2001 (reproduced as Ex. H to Pet. Mem. and as Ex. M to Answer).

### C. *The Instant Habeas Petition*

On December 6, 2002, Taveras submitted the instant habeas petition to this Court's Pro Se Office. *See* Petition. In it, he raised two grounds for relief: (1) that he was denied his constitutional right to appeal in violation of the Fourteenth Amendment, and (2) that his trial *in absentia* violated his due process rights under the Fourteenth Amendment because he was never given the required *Parker* warnings. *Id.* at 4, 7. Taveras also argued that his inability to obtain the trial transcripts has prevented him from identifying any other constitutional violations. *Id.* at 7.

The respondent opposed the Petition, arguing that Taveras's constitutional

rights were not violated as a result of his appeal being dismissed. *See* Memorandum of Law in Support of Answer Opposing Petition for a Writ of Habeas Corpus, filed August 12, 2003 (Docket #9) ("Resp.Mem."). Specifically, the respondent argued that the unstated reason behind the Appellate Division's dismissal of Taveras's appeal was the fugitive disentitlement doctrine, which the respondent asserted does not implicate any constitutional right. *Id.* at 8–9. The respondent further maintained that to grant Taveras relief because he had not been appointed counsel for his direct appeal would require this Court to rule that due process forbids the "automatic" dismissal of fugitive appeals, *id.* at 10, which would be a "new rule" under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See id.* at 9–12.

Taveras submitted a *pro se* reply, in which he made it clear that he was raising a claim that his due process rights were abridged by the state court's failure to appoint counsel to assist him in prosecuting his direct appeal once the Appellate Division determined that a timely notice of appeal had been filed. *See* Pet. Reply I at 10–15. Thereafter, the newly-appointed *pro bono* counsel submitted a memorandum of law on Taveras's behalf. *See* Pet. Mem. Through counsel, Taveras moved to amend his petition to include the following ground for relief:

The New York courts' denial of petitioner's application for counsel to prosecute his direct appeal as of right and for a copy of the trial transcript violated petitioner's right to due process and equal protection under the Fourteenth Amendment of the United States Constitution.

*Id.* at 1.

The respondent consented to the amendment but argued that Taveras was still not

entitled to any relief from this Court. *See* Supplemental Memorandum of Law in Support of Answer Opposing Petition for a Writ of Habeas Corpus, filed March 31, 2004 (Docket # 15) ("Resp.Supp.Mem."). Taveras's counsel thereafter submitted a reply brief. *See* Reply Memorandum of Law in Support of Petition for a Writ of Habeas Corpus, filed April 21, 2004 (Docket # 16).

## II. *LEGAL PRINCIPLES OF GENERAL APPLICATION*

### A. *Scope of Review for Habeas Petitions Brought Pursuant to 28 U.S.C. § 2254*

The federal habeas corpus statute provides:

[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). Errors of state law are thus not subject to federal habeas review. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Rather, a petitioner must demonstrate that his conviction resulted from a state court decision that violated federal law. *See, e.g., id.* at 68, 112 S.Ct. 475.

### B. *The Exhaustion Requirement*

Before a federal court may consider the merits of a habeas claim, a petitioner is required to exhaust his available state court remedies. *See* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State ...."); *accord Daye v. Attorney Gen.,* 696 F.2d 186, 190–91 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). To exhaust a habeas claim, a petitioner is required to have presented that claim to each level of the state court system available to review the claim. *See, e.g., O'Sullivan v. Boerckel,* 526 U.S. 838, 844–45, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991). Also, the petitioner must also have fairly presented the federal nature of his claim to the state courts. *See, e.g., Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275–76, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye,* 696 F.2d at 191–92.

### C. *Procedural Default*

Where a state court rejects a petitioner's claim because the petitioner failed to comply with a state procedural rule, the procedural default may constitute an adequate and independent ground for the state court decision. *See, e.g., Coleman v. Thompson,* 501 U.S. 722, 731–32, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Although procedurally defaulted claims are deemed to be exhausted for habeas purposes, a procedural default will "bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice,'" *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (citations omitted), which requires a petitioner to demonstrate "actual innocence," *Calderon v. Thompson,* 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998); *accord*

*Dretke v. Haley,* 541 U.S. 386, 124 S.Ct. 1847, 1849, 1852, 158 L.Ed.2d 659 (2004); *Coleman,* 501 U.S. at 749–50; *Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir.2002); *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000).

## III. *DISCUSSION*

As noted, Taveras has raised several claims in his petition. Because this Court concludes that Taveras's claim that he was improperly denied counsel in the direct appeal of his conviction requires granting the petition, it is unnecessary—and indeed would be premature—to adjudicate the remaining issues.

### A. *Exhaustion*

■ Respondent argues that Taveras's claim that he was entitled to counsel on appeal is unexhausted—and should be deemed procedurally barred—because he raised the claim only in a discretionary leave application to the New York Court of Appeals. Resp. Mem. at 13; Resp. Supp. Mem. at 10. As noted, the habeas statute provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). Thus, in the typical case, the statute requires a habeas petitioner to raise any claim of trial error in the Appellate Division and thereafter in a leave application to the New York Court of Appeals. This case is an unusual one, however, because the issue that is in need of exhaustion is based not on an alleged error in the trial court but rather on the Appellate Division's own decision to deny Taveras counsel. Because the Appellate Division's order denying counsel itself constituted the alleged error, it was logi-cally impossible for Taveras to have presented his arguments regarding the error of this ruling as part of any briefing on the merits in the Appellate Division.

While the respondent faults Taveras for not responding to the prosecution's motion seeking dismissal, *see* Resp. Mem. at 12–13; Resp. Supp. Mem. at 9–10, Taveras's failure to respond has no bearing on the only facts relevant to exhaustion: that he made a claim for counsel to the Appellate Division, *see* Spokony Letter (treating Taveras's prior applications as seeking appointed counsel), and that the Appellate Division denied that claim. There was simply no mechanism by which Taveras could have challenged the Appellate Division's decision denying him counsel except by seeking leave to appeal to the Court of Appeals.

Thus, Taveras's first opportunity to challenge the Appellate Division's decision denying him counsel came when he made an application to the Court of Appeals for leave to appeal from the Appellate Division's decision. Taveras certainly raised the issue of his right to counsel—and explicitly in federal constitutional terms—in his application for leave to appeal. Taveras wrote two letters to the Court of Appeals asserting that he was denied his right to counsel on appeal, and, in one letter, cited *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), a Supreme Court case reaffirming the right to counsel during a first appeal as of right. *See* June 2001 Letter to Ct. of App. at 2; July 2001 Letter to Ct. of App. at 2. It is obvious—and respondent does not contest—that this was sufficient to "fairly present[ ]" the federal nature of his claim to the Court of Appeals. *Daye,* 696 F.2d at 191 (internal quotation marks and citations omitted).

Rather, respondent cites cases for the unremarkable proposition that the typical

federal habeas litigant cannot exhaust a claim by raising it for the first time on a discretionary appeal. *See* Resp. Supp. Mem. at 10 (citing *Castille v. Peoples*, 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) and *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir.2000), *cert. denied*, 532 U.S. 943, 121 S.Ct. 1404, 149 L.Ed.2d 347 (2001)). But these cases are irrelevant because they involved errors that could have been presented at an earlier stage of the proceedings. Here, by contrast, the error complained of—the denial of the right to counsel—occurred in the Appellate Division only at the moment the Appellate Division adjudicated Taveras's application for counsel and simultaneously dismissed his appeal.

The only case with facts similar to those here of which this Court is aware reached the same conclusion. In *West v. Breslin*, 2001 WL 856604, at *1, 2000 U.S. Dist. LEXIS 21453, at *4 (S.D.N.Y. July 31, 2000) (Report and Recommendation), *adopted by* 2001 WL 856604, at *1, 2001 U.S. Dist. LEXIS 10682 (S.D.N.Y. July 30, 2001), the petitioner had been denied counsel on appeal and the appeal was dismissed by summary order after the prosecution had urged its dismissal on grounds of laches. The petitioner raised his constitutional claim to counsel for the first time in his application for leave to appeal and the application was denied. 2001 WL 856604, at *1, 2000 U.S. Dist. LEXIS 21453, at *4–*5. When the petitioner sought federal habeas relief, the respondent argued that the failure-to-appoint counsel claim was unexhausted. *Id.* at *5. The Court rejected that argument on the ground that claim had been exhausted through the application for leave to appeal, *id.* 2001 WL 856604, at *1, 2000 U.S. Dist. LEXIS 21453, at *6, and the writ was granted, *id.* 2001 WL 856604, at *1, 2000 U.S. Dist. LEXIS 21453, at *17.

The same logic prevails here because it was not possible for Taveras to claim that his right to counsel on appeal was violated until *after* the Appellate Division denied his application for counsel. As a result, Taveras's application for leave to appeal to the Court of Appeals was the first and only opportunity he had to present the claim. This application, therefore, must be considered sufficient for exhaustion. In other words, Taveras had no "right under the law of the State to raise, by any [other] available procedure, the question presented." 28 U.S.C. § 2254(c). Because the habeas statute requires only that a petitioner exhaust "the remedies available" in the state courts, 28 U.S.C. § 2254(b)(1), Taveras has satisfied the exhaustion requirement.

### B. *Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), once a state court has adjudicated a claim "on the merits," a petition for writ of habeas corpus may not be granted with respect to the claim unless the state court's adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, the Supreme Court held that a state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). *Williams* held that habeas relief is avail-

able under the "unreasonable application" clause "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S.Ct. 1495. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495.

If, however, the state court has not adjudicated the claim "on the merits," the federal habeas court reviews *de novo* the state court disposition of the petitioner's federal constitutional claims. *See, e.g., Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir.2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir.2001)). Thus, a preliminary issue in this case is whether Taveras's claim that he was denied his right to appellate counsel was "adjudicated on the merits" in state court. Although neither the Appellate Division nor the Court of Appeals articulated a reason for their decisions to deny counsel, both parties assume that AEDPA's deferential standard applies to all of Taveras's claims, albeit for different reasons. *See* Pet. Mem. at 7–8; Resp. Supp. Mem. at 2–4. While it is not clear to this Court that there was, in fact, an adjudication on the merits of Taveras's claim that he was unconstitutionally denied appellate counsel, it is unnecessary to decide this issue as the result is the same even under the AEDPA's deferential standard of review, which is more favorable to the respondent.

## C. *Right to Counsel on Appeal*

### 1. *Supreme Court Law*

The threshold issue presented is whether or not the state court—once it decided

to treat Taveras's notice of appeal as timely in 2000 and to construe Taveras's submissions as seeking the appointment of counsel—could then dismiss that appeal without appointing counsel and, secondarily, without providing a copy of any transcripts available and necessary for the prosecution of that appeal.

■ For more than a century, "the [Supreme] Court [has] held that the Constitution does not require States to grant appeals as of right to criminal defendants seeking to review alleged trial court errors." *Evitts*, 469 U.S. at 393, 105 S.Ct. 830 (citing *McKane v. Durston*, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894)). However, when a state grants criminal defendants the right to appeal, the state must "act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause." *Id.* at 401, 105 S.Ct. 830. Thus, in *Douglas v. California*, 372 U.S. 353, 357–58, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), the Supreme Court held that the due process clause requires that an indigent defendant be given counsel for an appeal as-of-right. This right was reaffirmed in *Evitts*, in which the Court held that the assistance of counsel provided on appeal must also be effective. 469 U.S. at 393, 105 S.Ct. 830 ("[I]f a State has created appellate courts as an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant, the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution.") (ellipsis in original) (internal quotation marks and citation omitted); *see also Ross v. Moffitt*, 417 U.S. 600, 616, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) ("The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a con-

tinuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process."). As the Supreme Court explained in *Evitts:*

> In bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. To prosecute the appeal, a criminal appellant must face an adversary proceeding that—like a trial—is governed by intricate rules that to a layperson would be hopelessly forbidding. An unrepresented appellant—like an unrepresented defendant at trial—is unable to protect the vital interests at stake.

469 U.S. at 396, 105 S.Ct. 830.

■ Furthermore, the Supreme Court has long held that "[d]estitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." *Griffin v. Illinois,* 351 U.S. 12, 19, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Thus, the state is required to provide an indigent defendant with a copy of the transcripts or find some other means of affording adequate and effective appellate review to indigent defendants. *Id.* at 19–20, 76 S.Ct. 585; *accord Draper v. Washington,* 372 U.S. 487, 495–96, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963).

The respondent here concedes, as he must, that an indigent defendant has a constitutional right to counsel in his direct appeal, as well as a right to transcripts. *See* Resp. Mem. at 8; Resp. Supp. Mem. at 4–5. But he appears to make two arguments asserting that the denial of these rights in Taveras's case was proper. First, he argues that the dismissal of the appeal was necessarily based on the fugitive disentitlement doctrine and that this doctrine provided a basis for the Appellate Division's ruling denying counsel. Resp. Mem. at 8–12; Resp. Supp. Mem. at 10–14. Second, he argues that the denial of poor person relief—a prerequisite to the appointment of counsel—was based on Taveras's failure to provide an affidavit showing his indigency. Resp. Supp. Mem. at 5–8. Each issue is discussed separately.

2. *Effect of the Fugitive Disentitlement Doctrine on the Right to Counsel on Appeal*

The respondent spends a good portion of his submission making the argument that the fugitive disentitlement doctrine was properly applied in this case. *See* Resp. Mem. at 8–12; Resp. Supp. Mem. at 10–14. But the crux of the respondent's argument as to the denial of appointed counsel is that the Appellate Division acted properly in "automatic[ally]" dismissing Taveras's appeal on this basis. *See* Resp. Mem. at 10–11; Resp. Supp. Mem. at 12–14. In other words, the respondent argues that once the Appellate Division concluded that the fugitive disentitlement doctrine applied to Taveras's situation, it was not required to afford Taveras counsel to present any arguments on his behalf—*including arguments on whether the fugitive disentitlement doctrine in fact applied.*

Thus, respondent's argument is that the state court was not required to afford Taveras his constitutional right to appellate counsel because his appeal could be properly dismissed under the fugitive disentitlement doctrine. Put another way, respondent argues that, even where a former fugitive is before an appellate court with a pending appeal, Supreme Court case law mandating the appointment of appellate counsel does not apply as long as the fugitive disentitlement doctrine permits dismissal of that appeal. But not only has the respondent pointed to no case so holding (or even suggesting), the argument

does not account for the Supreme Court case law making clear that the denial of the right to counsel on appeal constitutes the sort of constitutional error that does not require the showing of prejudice.

■ In *Penson v. Ohio*, 488 U.S. 75, 77–78, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), appellate counsel had been granted leave to withdraw based on his certification that the defendant had no potential meritorious claims. The state appellate court ultimately concluded, however, that counsel had made that certification improperly. *Id.* at 79, 109 S.Ct. 346. Indeed, although the state appellate court found that petitioner had several potentially meritorious claims—including one that required reversal of one count of his conviction—it still refused to appoint counsel on the ground that it had examined these claims and reached the proper adjudication on the merits. *Id.* In the Supreme Court, the prosecution argued that any error in failing to provide effective appellate counsel was harmless in light of the lack of merit of the petitioner's claims. *Id.* at 85, 109 S.Ct. 346. The Supreme Court held, however, that it would presume prejudice in such a situation given that "the denial of counsel in this case left petitioner completely without representation during the appellate court's actual decisional process." *Id.* at 88, 109 S.Ct. 346. In essence, the Supreme Court held that the right to counsel on appeal cannot be abridged even if it could be shown that the failure to appoint counsel did not result in any prejudice. In a related context, the case law is clear that where counsel improperly fails to file a notice of appeal—thereby depriving the defendant of any appeal at all—a federal habeas court must not examine the underlying merits of the appeal to determine if the denial of the appeal was prejudicial, but rather must require the state to afford the habeas petitioner a new appeal. *See, e.g.,*

*Restrepo v. Kelly,* 178 F.3d 634, 641–42 (2d Cir.1999).

■ Here, the respondent never adverts to or discusses the presumption-of-prejudice rule reflected in *Penson.* Nor has respondent pointed to case law suggesting that the Supreme Court's mandate that counsel must be provided to a defendant on a first appeal contains a *sub silentio* exception that, where the defendant was formerly a fugitive, his or her right to counsel vanishes permanently—or an exception requiring the defendant to make uncounseled arguments in opposing a motion to dismiss the appeal on fugitive disentitlement grounds. To the contrary, case law and logic make clear that Taveras was entitled to counsel to present arguments to the Appellate Division on his behalf, including arguments on whether the fugitive disentitlement doctrine in fact applied to his case.

Respondent's argument on this point is that the Supreme Court has "rejected the notion that a state criminal defendant is even entitled to notice before his appeal is dismissed as a result of his fugitive status." Resp. Mem. at 11. It necessarily follows, argues the respondent, that a defendant need not be assigned counsel at all to argue the dismissal issue. But the case respondent cites in support of this proposition, *Estelle v. Dorrough,* 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975) (per curiam), did not make any ruling with regard to what "notice" must be given a formerly fugitive defendant. Nor did it even discuss what notice the defendant in *Dorrough* received.

Rather, *Dorrough* held only that Texas was entitled to apply its fugitive disentitlement statute even though the statute contained exceptions according the Texas appellate court discretion to hear the appeals of certain categories of fugitives (such as those who had received a death sentence).

420 U.S. at 539–41, 95 S.Ct. 1173. The Court made no statement—let alone set forth a holding—on what "notice" need be given a former fugitive before his appeal is dismissed and, indeed, the lower court opinion makes clear that Texas applied its fugitive disentitlement statute only after the prosecution had filed a "motion" to dismiss the appeal, *see Dorrough v. Estelle*, 497 F.2d 1007, 1009 (5th Cir.1974)—a motion that was presumably made on notice to the defendant. While the opinion does not reveal whether Dorrough was afforded counsel for his direct appeal, it is likely that he had counsel as is demonstrably true in the other cases cited by respondent in support of this argument. *See Goeke v. Branch*, 514 U.S. 115, 116, 115 S.Ct. 1275, 131 L.Ed.2d 152 (1995) (per curiam) (former fugitive appeared represented by counsel in state appeal as reflected in *State v. Branch*, 811 S.W.2d 11, 11–12 (Mo.App.1991)); *Joensen v. Wainwright*, 615 F.2d 1077, 1078 (5th Cir.1980). In any case, what is important is that the Supreme Court has never limited *Evitts* or *Douglas* to hold that the right to counsel vanishes in instances where a former fugitive is brought before a court and the prosecution moves to dismiss on fugitive disentitlement—or any other—grounds. Indeed, there appears to be no Supreme Court decision that permits even a coherent argument that the right to counsel would not attach in such a situation.

The respondent's insistence that there was some basis on which to "automatically" dismiss Taveras's appeal without appointing counsel may perhaps derive from the Supreme Court's having characterized the Texas statute at issue in *Dorrough* as permitting the "automatic" dismissal of a former fugitive's appeal in most cases.

420 U.S. at 535, 95 S.Ct. 1173. But the respondent misapprehends the sense in which the Supreme Court uses the word "automatic." *Dorrough* used the word "automatic" to indicate that the Texas statute *required* the Texas appellate court to dismiss a fugitive's appeal in most cases— a feature *Dorrough* upheld against constitutional challenge. The respondent, however, is attempting to enlarge the meaning of "automatic" to encompass a dismissal "without notice" to the defendant and thus to argue that an appellate court may dismiss an appeal without even informing a defendant who has been brought before the court and subject to its process that it is doing so—and without affording counsel to contest the dismissal. This argument must be rejected not only because it contravenes *Douglas* and is completely unanchored in any Supreme Court case law but also because it invites the Court to eliminate the hallmarks of due process: "notice" and "the opportunity to be heard." *E.g., Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S.Ct. 2633, 2648–49, 159 L.Ed.2d 578 (2004) (citations and internal quotations omitted).

Nor does the respondent's proposed rule make any sense. For example, even in a state with an "automatic" dismissal rule, there might be some factual or legal dispute regarding the applicability of a state's fugitive disentitlement doctrine that could only be brought to the appellate court's attention by permitting the former fugitive to present his arguments and to do so through counsel. In a state with a discretionary fugitive disentitlement doctrine, it would be even more critical that the defendant be given the opportunity to oppose the prosecution's motion to dismiss through counseled arguments.[1] The

---

1. While it is not necessary to address the issue, it appears that there is no "automatic" dismissal rule in New York State with respect

to former fugitives who are brought before the Court while their appeal is pending. For example, one case has explicitly rejected the

state's interest in applying the fugitive disentitlement doctrine would not be vindicated by denying the defendant an opportunity to address whether the doctrine even applies. And, as already noted, neither the Supreme Court nor—to this Court's knowledge—any other court has countenanced the denial of counsel to a former fugitive whose appeal is the subject of a dismissal motion by the prosecution, whether based on the fugitive disentitlement doctrine or on any other basis.

■ In sum, the Supreme Court has made clear that the right to appellate counsel does not permit an exception in those circumstances where the threshold issue on appeal is the applicability of the fugitive disentitlement doctrine. The standard of review makes no difference to the outcome of this case. *Douglas, Evitts*, and *Penson*—among other cases—constitute "clearly established" Supreme Court law that required New York State to appoint counsel for any criminal defendant on his first appeal as-of-right. The Court is unaware of any case that has articulated an exception to that mandate in a situation where the defendant seeking to appeal had at one time previously been a fugitive and where the prosecution wishes to dismiss based on the fugitive disentitlement doctrine. Thus, because the decision to deny Taveras counsel was "contrary to" clearly established Supreme Court law, federal habeas relief is mandated.

### 3. *Denial of Poor Person Relief*

The respondent makes an additional argument in opposition to habeas relief: that

Taveras was properly denied counsel on appeal—or an appeal at all—because he did not demonstrate his eligibility for poor person status by filing an affidavit of indigency. *See* Resp. Supp. Mem. at 5–8. Given this Court's conclusion that Taveras was entitled to counsel, the respondent's argument may be restated as follows: even though Taveras, if indigent, was entitled to be appointed counsel on his appeal, the Appellate Division properly denied him such counsel for failure to file an affidavit of indigency.

Strangely, the respondent insists that poor person relief was not denied "on a procedural basis." Resp. Supp. Mem. at 4. But there is simply no other way to categorize the respondent's argument. The respondent does not argue that poor persons do not have a substantive right to appointed counsel under the federal constitution. Nor does he argue that there is some process mandated by the federal constitution by which a poor person must demonstrate his eligibility for counsel. Rather, the respondent argues that poor persons must follow a particular *state law* process—apparently Civil Practice Law and Rule ("CPLR") § 1101(a), *see* Resp. Supp. Mem. at 5–6—in order to obtain the counsel to which the federal constitution entitles them. This sort of argument is a familiar one in federal habeas corpus jurisprudence: reliance on a state procedural bar as an adequate and independent state ground for the Appellate Division's decision.

The first flaw in the respondent's argument is that there is no reason to believe

application of the doctrine in precisely Taveras's situation. *See People v. Estrada*, 173 A.D.2d 555, 555, 570 N.Y.S.2d 150 (2d Dep't 1991) (finding it "inappropriate" to dismiss appeal on fugitive disentitlement grounds where defendant was a fugitive when the notice of appeal was filed but was thereafter made "amenable to the jurisdiction of this

court" and had "indicated a desire to pursue his appeal"); *cf. Barker v. Jones*, 668 F.2d 154, 155–56 (2d Cir.1982) (noting that "[w]hen an appellant has been returned to the jurisdiction of the court before the appeal is dismissed, however, he has not necessarily lost his rights; the per se dismissal rule does not apply").

that the Appellate Division denied Taveras counsel because he failed to file an affidavit of indigency under CPLR § 1101(a). While it may not be necessary for a state court to state explicitly that it is relying on a procedural bar in order for the bar to be invoked, a federal habeas court cannot assume the existence of such a bar or some other adequate and independent state ground if "there is good reason to question whether there is an independent and adequate state ground for the decision." *Aparicio*, 269 F.3d at 93 (citations and internal quotation marks omitted).

■ Here, there is absolutely no reason to conclude that the state court denied Taveras counsel because he failed to submit an affidavit of indigency. To the contrary, the prosecution's memorandum of law to the Appellate Division—which set forth its argument why the court should dismiss the appeal and "reject defendant's application for poor person relief," Cross Motion Mem. at 10,—relied *exclusively* on the fugitive disentitlement doctrine and jurisdictional arguments regarding Taveras's failure to comply with statutory time limits. *See id.* at 10–22. The memorandum of law makes no mention whatsoever of Taveras's purported failure to comply with

CPLR § 1101(a). It is only in an accompanying affirmation that the prosecution even notes that Taveras has not filed such an affidavit—a mention that occurs in a single paragraph. *See* Cross Motion Aff. ¶ 27. That lone mention states in substance that:

> [b]efore [Taveras] receives permission to prosecute this appeal at the taxpayers' expense, defendant should be required to comply with the statute by submitting a detailed, notarized affidavit containing allegations specific enough to show that he is unable to prosecute this appeal at his own expense.

*Id.* The prosecution was thus inviting the Appellate Division to "require" Taveras to file such an affidavit—presumably by means of some additional order—"before" it granted Taveras the opportunity to proceed *in forma pauperis*. The implication of the prosecution's affirmation is not that the appeal should be dismissed or counsel denied based on some prior failure of Taveras to comply with CPLR § 1101(a) or any other state law process. Rather, the implication is that the Appellate Division should issue some further order requiring the filing of such an affidavit in the event that it allowed the appeal to proceed.[2]

---

2. In a somewhat perverse argument, the respondent faults Taveras for not making a *second* application for counsel specifically to respond to the prosecution's motion to dismiss the appeal. *See* Resp. Mem. at 13 ("[p]etitioner ... did not ask the court to appoint counsel for him to assist in responding to that motion"); *cf.* Resp. Supp. Mem. at 9. But there is no question that the Appellate Division viewed Taveras as seeking the appointment of counsel to handle his appeal, *see* Spokony Letter, and there is obviously no federal or state requirement that a defendant otherwise entitled to appointed counsel must make a renewed application for counsel each time the prosecution files papers in that appeal.

In a similar vein, respondent makes a cursory argument that Taveras's claim to counsel is "procedurally forfeited" on the ground that Taveras failed to respond to the prosecution's motion to dismiss. *See* Resp. Mem. at 12–13. Not surprisingly, respondent points to no state procedural rule providing that an uncounseled appellant forfeits his right to relief to which he is otherwise entitled—let alone his right to counsel—by failing to respond to a prosecutor's argument by means of a *pro se* memorandum of law. Nor is there any reason to believe that the Appellate Division relied on any such rule. Notably, in a later submission, the respondent asserts that the Appellate Division did not dismiss the appeal or deny poor person's relief on a procedural basis. *See* Resp. Supp. Mem. at 4 ("There is simply nothing on the face of either order [of the Appellate Division] to suggest that the

The net result is that there is no reason to believe that the Appellate Division dismissed the appeal or denied counsel based on Taveras's not having filed an affidavit of indigency. Rather, having rejected the jurisdictional argument, *see* Resp. Supp. Mem. at 11 n. 4, the Appellate Division's order could only have been grounded on its application of the fugitive disentitlement doctrine—the only other argument the prosecution relied on in its memorandum of law seeking to dismiss Taveras's appeal and one that the prosecution specifically put forward as a basis for denying poor person relief. *See* Cross Motion Aff. ¶ 25. But, as already discussed, the Appellate Division could not permissibly have denied an otherwise eligible poor person counsel even if the appeal appeared dismissable on fugitive disentitlement grounds.

■ In any case, even if the Appellate Division had explicitly or implicitly relied on CPLR § 1101(a) as the basis for denying Taveras counsel, such reliance could not possibly constitute an "adequate" state ground precluding habeas relief. A procedural bar is "adequate" only if it is based on a rule that is " 'firmly established and regularly followed' " by the state in question. *Ford v. Georgia*, 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348–52, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984)); *accord Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir.1999). Whether application of the procedural rule is "firmly established and regularly followed" must be judged in the context of "the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances." *Cotto*, 331 F.3d at 240 (citing *Lee v. Kemna*,

534 U.S. 362, 386–87, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002)).

Here, there is no record that Taveras was ever instructed to file an affidavit and thereafter declined to do so. The respondent does not even argue that New York State has a "firmly established and regularly followed" practice of denying *in forma pauperis* relief where a defendant in Taveras's situation fails to file an affidavit. As the respondent does not make any argument in support of this proposition—and as it is implausible that New York State regularly denies counsel for failure to file an affidavit of indigency in situations where the court recognizes that an incarcerated defendant is seeking counsel and yet has not directed him to file such an affidavit—it is unnecessary to consider it further. *See also Swenson v. Bosler*, 386 U.S. 258, 260, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967) (per curiam) ("It is now settled 'that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request.' ") (quoting *Carnley v. Cochran*, 369 U.S. 506, 513, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962)).

In sum, to the extent that respondent is arguing that the denial of counsel should be affirmed because Taveras failed to fill out the proper application for poor person relief, that argument is rejected. Thus, what remains is the Appellate Division's improper refusal to provide Taveras with counsel on his direct appeal. Because that denial was contrary to clearly established Supreme Court law requiring the appointment of counsel, Taveras must be provided with a counseled appeal on the same terms as any other defendant, including the provision of a transcript and the waiver of any filing fees. The Appellate Division is, of course, free to require Taveras to make whatever showing is necessary as a matter of state law to demonstrate eligibility for

Appellate Division resolved either motion on a procedural basis.").

poor person relief. Of course, nothing in this Court's decision would bar the prosecution from making any argument it wishes to the New York State courts regarding the applicability of the fugitive disentitlement doctrine.

*Conclusion*

For the foregoing reasons, Taveras should be released from custody unless his direct appeal to the Appellate Division is reinstated and, assuming Taveras has satisfied the New York State courts as to his indigency, appellate counsel is appointed. Such acts should take place within 60 days of the entry of judgment in this matter. Thereafter, his appeal should proceed on the same basis as any other similar appeal in the New York State courts.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to file any objections. *See also* Fed.R.Civ.P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Sidney H. Stein, 500 Pearl Street, New York, New York 10007, and to the undersigned at 40 Centre Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Stein. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Dated: Jan. 6, 2005.