**Jose Martin TAVERAS, Petitioner–Appellee,**

v.

**Superintendent Joseph T. SMITH, Respondent–Appellant.**

**No. 05–5579.**

United States Court of Appeals, Second Circuit.

Argued: May 15, 2006.

Decided: Sept. 11, 2006.

Ursula Bentele, BLS Legal Services, Inc. (Lisa Jackson, Rachel Kish, Steven Lynch, Bolanle Mayowa, Law Interns, on the brief), New York, N.Y., for Petitioner–Appellee.

Morrie I. Kleinbart, Assistant District Attorney for Robert M. Morgenthau, District Attorney, New York County (Michael S. Morgan, Assistant District Attorney, on the brief), New York, N.Y., for Respondent–Appellant.

Before: CARDAMONE, CALABRESI, and POOLER, Circuit Judges.

CALABRESI, Circuit Judge.

Respondent–Appellant Joseph T. Smith, Superintendent of the Shawangunk Correctional Facility in Wallkill, New York, appeals from a judgment of the United States District Court for the Southern District of New York (Stein, *J.*), conditionally granting the application for a writ of habeas corpus of Jose Martin Taveras ("Taveras" or "Petitioner") and ordering that Taveras be released from custody unless the New York Appellate Division reinstated his direct appeal within 60 days, and—if Taveras met the relevant indigency requirements—appointed counsel to represent him. *See Taveras v. Smith*, 388 F.Supp.2d 256, 259 (S.D.N.Y.2005). The question we consider on appeal is whether it was contrary to or an unreasonable application of settled Supreme Court precedent for the New York state court to dismiss the first-tier appeal of a returned fugitive without first appointing counsel—given that under New York law and practice such dismissals are discretionary.

**BACKGROUND**

*I. Criminal Proceedings*

On November 29, 1984, Taveras was charged in New York state court with murder and other crimes. After approximately sixteen months in custody pending trial, Taveras was released on his own recognizance.

On May 16, 1988, Taveras failed to appear at his scheduled trial. A bench warrant failed to return him to state custody, and, after conducting a *Parker* hearing,[1] the trial court ordered Taveras to be tried *in absentia*. On June 7, 1988, Taveras—though absent—was tried and convicted of two counts of second-degree murder (New York Penal Law §§ 125.25[1], [3] (both intentional and felony murder)), and one count each of attempted second-degree murder (New York Penal Law §§ 110.00/125.25[1]), fourth-degree criminal possession of a weapon (New York Penal Law § 265.02[4]), and second-degree bribery (New York Penal Law § 200.00). On June 29, 1988, Taveras was sentenced, still *in absentia*, to two concurrent prison terms of 25 years to life imprisonment for the murder convictions, a concurrent term of 8-and-one-third to 25 years imprisonment for the attempted murder conviction, a concurrent term of one year of imprisonment for the weapons possession conviction, and a consecutive term of 5 to 15 years imprisonment for the bribery conviction.[2]

Immediately following trial, unbeknownst to Taveras, his trial attorney filed

---

1. *See People v. Parker*, 57 N.Y.2d 136, 142, 454 N.Y.S.2d 967, 440 N.E.2d 1313 (N.Y. 1982) (describing the facts the trial court must consider before deeming a defendant to have knowingly and voluntarily waived his right to be present as his criminal trial).

2. Taveras's full history of charged crimes and bail jumping is not recounted here. It raises questions about why he was given repeated chances to flee. And it certainly makes him a singularly unattractive candidate for habeas relief. That history is not, however, germane

a notice of appeal on his behalf. No action was taken on this appeal until, eight years later, Taveras was returned to state court on the 1988 bench warrant. His sentence was executed on December 15, 1997.

## II. Procedural & Appellate History

On February 13, 1998, still unaware of the notice of appeal filed for his murder convictions, Taveras moved the New York Appellate Division, First Department, for an extension of time to file a notice of appeal. The state opposed this motion, and on June 16, 1998, the Appellate Division summarily denied Taveras's request. Two years later, on June 6, 2000, Taveras again moved the First Department seeking to reargue the issue of an extension of time in which to file a notice of appeal. He contended that counsel had improperly failed to file one on his behalf and that he had not been informed of the proceedings against him. The state opposed this motion as well, and on July 20, 2000, the First Department denied it summarily.

On September 11, 2000, Taveras, *pro se*, filed a petition with the District Court for the Southern District of New York for habeas corpus. In it he alleged that he had been denied his Fifth and Fourteenth Amendment rights to appeal his conviction in state court. In the course of preparing its response, the state discovered a copy of the notice of appeal filed on Taveras's behalf immediately after his trial. *See Taveras v. Portuondo*, 2001 WL 705850 at *1 (S.D.N.Y. June 13, 2001). The district attorney informed the First Department of this filing, and the First Department recalendared Taveras's motions and treated them as applications for leave to prosecute the direct appeal as a poor person and for assignment of counsel. The district attorney opposed these reconfigured motions and cross-moved for dismissal of the ap-

peal. The state argued that Taveras had abandoned his right to appeal by absconding, and that even if the timely-filed notice of appeal were valid, the First Department could have *sua sponte* dismissed his appeal ten years earlier by its own rules. In addition, the state argued that as a motion for poor person's relief, the filing did not comply with New York state rules requiring a detailed, notarized affidavit. Petitioner did not respond to this cross-motion.

On March 22, 2001—before the federal district court had acted on Taveras's *pro se* petition—the Appellate Division issued an order reconsidering all its prior decisions concerning Taveras. The court stated, in full:

> An order of this Court having been entered on June 16, 1998 denying defendant's motion for an extension of time in which to file a notice of appeal from the judgment of the Supreme Court, New York County, rendered on or about June 29, 1988, and for leave to prosecute the appeal as a poor person, assignment of counsel, and related relief,
>
> And a further order of this Court having been entered on July 20, 2000 denying defendant's motion for reargument/renewal of this Court's order entered on June 16, 1998,
>
> Now, upon the Court's own motion, reconsideration of the aforesaid orders of this Court is granted and, upon reconsideration, defendant's motion, insofar as it seeks leave to file a late notice of appeal, is denied as unnecessary, a timely notice of appeal from the aforesaid judgment having been duly filed by trial counsel on defendant's behalf; and, insofar as it seeks leave to prosecute the appeal as a poor person and for assignment of counsel, the motion is denied.

to the legal issues before us, and hence is best put aside.

And respondent having moved for an order dismissing the appeal,

Now, upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon,

It is ordered that the motion is granted and the appeal is dismissed.

Both parties assume that the Appellate Division's dismissal of Taveras's appeal was based on New York's fugitive disentitlement doctrine, because the district attorney's only other, still available, argument for dismissal (concerning untimeliness) was expressly rejected by the court. We accept the parties' assumption, but this, of course,—as will be apparent later—does not mean that in deciding to apply the doctrine the New York court did not consider, at least to some extent, the possible merits of Taveras's appeal.[3]

Following the Appellate Division's dismissal, the U.S. district court ruled on Taveras's September 2000 habeas petition. *See Taveras*, 2001 WL 705850. Adopting the report and recommendation of Magistrate Judge Ronald L. Ellis, Judge Stein rejected Taveras's claim that he had been denied the right to appeal. *See id.* at *3. The court found, however, that Taveras's claim that he had been denied appellate counsel was unexhausted. Accordingly, the district court dismissed that claim without prejudice to its renewal in order to permit Taveras to present the issue to the New York Court of Appeals. *See id.* at **4–5.

Taveras sought leave from the New York Court of Appeals to file an untimely appeal from the Appellate Division's order denying him counsel. On September 16, 2001, the Court of Appeals granted Taveras permission to file an untimely application. That, now timely, application was denied on December 18, 2001, thereby putatively exhausting Taveras's claim.

Taveras renewed his habeas claim in federal court on December 6, 2002. Magistrate Judge Gorenstein appointed counsel. On March 18, 2003, with leave of the court, Taveras renewed his claim that the denial of his application for counsel and for a free trial transcript by the Appellate Division had violated his due process and equal protection rights under the Fourteenth Amendment.

After further briefing, Magistrate Judge Gorenstein issued a thorough and thoughtful report in which he recommended granting Taveras's habeas petition. *See Taveras*, 388 F.Supp.2d at 259. He considered and rejected Respondent's renewed exhaustion challenge to Taveras's petition.[4] *Id.* at 265–66. He also rejected the state's contention that the Appellate Division properly denied Taveras's request for counsel because Taveras had failed to file an affidavit attesting to indigence. On the merits, Magistrate Judge Gorenstein found that Taveras had been denied his constitutionally-protected right to counsel—a right that was deemed unaffected by the fact that the threshold issue in Taveras's appeal was whether the fugitive disentitlement doctrine should apply. *See id.* at 271.

---

**3.** In an analogous case in which the state had "relied entirely" on a single rationale for dismissal of an appeal, and the state court entered dismissal, the United States Supreme Court construed the government's argument to be the basis of the state court's decision. *See Ortega–Rodriguez v. United States*, 507 U.S. 234, 235 n. 1, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993).

**4.** Respondent has abandoned this latter issue on appeal. *See* Fed. R.App. P. 28(a)(9)(A) (the appellant's brief "must contain ... appellant's contentions and the reasons for them"); *Smalls v. Batista*, 191 F.3d 272, 277 (2d Cir. 1999).

Adopting Magistrate Judge Gorenstein's reasoning and recommendation, the district court conditionally granted Taveras's application for a writ of habeas corpus and ordered that Petitioner be released from custody unless his direct appeal to the Appellate Division was reinstated within 60 days of the entry of judgment. District Judge Stein supplemented the magistrate judge's report in order to "especially [ ] take account of a newly discovered document that further supports the conclusion reached by Judge Gorenstein." He described that contrary to the state's assertions, on June 10, 1998, Taveras had in fact filed the requisite evidence of indigence, an Affidavit to Proceed in Forma Pauperis and for Assignment of Counsel, which had been inadvertently mishandled by the courts.[5]

Before our court, respondent challenges only the district court's holding on the merits of Taveras's right to counsel.

## DISCUSSION

### I.  Standard of review

■ We review a district court's decision to grant habeas corpus relief *de novo* and review findings of fact for clear error. *Jackson v. Edwards*, 404 F.3d 612, 618 (2d Cir.2005). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),

> [a]n application for a writ of habeas corpus...shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim [ ] resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [ ] resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Both parties agree that Taveras's claim that he was denied his right to appellate counsel was "adjudicated on the merits" in state court, though the district court expressed some hesitation as to whether this was in fact the case. As the district court ultimately did, we will apply the AEDPA deferential standard. We do so without further consideration of the issue, because the outcome in the present case would be the same under either the AEDPA or the pre-AEDPA standard of review. *Cf. Messiah v. Duncan*, 435 F.3d 186, 197–98 (2d Cir.2006) (declining to decide whether the petitioner's claims were adjudicated on the merits in state court, because his claims would fail even under the pre-AEDPA standard more favorable to his claims).

### II.  Taveras's Right to Counsel

The question before us is whether clearly established Supreme Court law prohibited the New York Appellate Division from dismissing Taveras's first-tier appeal on fugitive disentitlement grounds without appointing counsel and without providing a copy of any transcripts available and necessary for pursuing that appeal.

### A.  The Right to Counsel

Our criminal justice system stands on the bedrock principle that "there can be no equal justice where the kind of an appeal a man enjoys 'depends on the amount of money he has.'" *Douglas v. California*, 372 U.S. 353, 355, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (quoting *Griffin v. Illinois*, 351 U.S. 12, 19, 76 S.Ct. 585, 100 L.Ed. 891 (1956)). For that reason, the Supreme

---

5. In light of this new document, Taveras's eligibility for poor person's relief and his

completion of the proper paperwork requesting such relief is not contested on appeal.

Court held in *Douglas,* and reaffirmed and expanded in *Evitts v. Lucey,* that the Fourteenth Amendment guarantees a criminal defendant the right to counsel on his first appeal *if the state has provided such an appeal as of right. See Douglas,* 372 U.S. at 355–58, 83 S.Ct. 814; *Evitts v. Lucey,* 469 U.S. 387, 393–94, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (holding that the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on such an appeal).

■ The right to a criminal appeal itself is not included in the Sixth Amendment, and is rather a creature of statute. *See Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.,* 528 U.S. 152, 160, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). But, once state law grants a first appeal as of right, the Fourteenth Amendment provides twofold protection to the right to counsel. First, the due process clause forbids states from establishing a system of appeals as of right but then refusing to provide each defendant with a fair opportunity for adjudication, and second, the equal protection clause prohibits states from "distinguish[ing] between poor and rich" in the provision of a meaningful appeal. *See Evitts,* 469 U.S. at 404–05, 105 S.Ct. 830; *see also Halbert v. Michigan,* 545 U.S. 605, 125 S.Ct. 2582, 2586–87, 162 L.Ed.2d 552 (2005). Both protections "emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.'" *Griffin,* 351 U.S. at 17, 76 S.Ct. 585 (quoting *Chambers v. Florida,* 309 U.S. 227, 241, 60 S.Ct. 472, 84 L.Ed. 716 (1940)).

■ As the Court has consistently recognized, the import of the broad principles expressed in *Douglas* is not confined to the precise facts of that case (a first-tier appeal as of right); the rationale of *Douglas* also extends to any case in which an indigent defendant seeks appellate review that (1) involves some consideration of the "merits," and (2) involves claims that have not yet "been presented by [appellate counsel] and passed upon by an appellate court," *Douglas,* 372 U.S. at 356, 83 S.Ct. 814, thereby leaving indigent defendants "generally ill equipped to represent themselves," *Halbert,* 125 S.Ct. at 2590. *See Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) (declining to extend the rationale of *Douglas* to indigent defendants seeking to pursue a second-tier discretionary appeal because neither of *Douglas*'s considerations were met in such a case); *Halbert,* 125 S.Ct. at 2587, 2590–95 (analyzing the two considerations that "were key to our decision in *Douglas,*" and concluding that states must appoint counsel for indigent defendants convicted on pleas of guilty or *nolo contendere* who pursue a first-tier appeal in state court, even though the allowance of such an appeal is *discretionary* under state law). Thus, even if a case does not align perfectly with the facts of *Douglas,* it is clear that the Fourteenth Amendment guarantees a criminal defendant the right to counsel on an appeal when both of *Douglas*'s conditions are met.[6] And of course, the Court's willingness to reaffirm and expand on the longstanding principles expressed in *Douglas* means that the central holding of *Douglas*—that the Fourteenth Amendment guarantees a criminal defendant the right to counsel on his first appeal if the state has provided such an appeal as of right—is *a fortiori* fully established.

■ The right to appellate counsel for the indigent also includes the right to free

**6.** We need not determine whether *Douglas* also clearly governs cases in which only one of its conditions is met because, as we discuss below, both are satisfied in this case.

copies of transcripts or another means of enabling effective representation. *See Griffin,* 351 U.S. at 19–20, 76 S.Ct. 585; *accord Halbert,* 125 S.Ct. at 2587; *Ross,* 417 U.S. at 606, 94 S.Ct. 2437; *Draper v. Washington,* 372 U.S. 487, 495–96, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963). Trial transcripts or other equivalent reports are among those " 'instruments needed to vindicate legal rights,' " of which the Supreme Court has stated: " 'differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution.' " *Fullan v. Comm'r of Corr. of N.Y.,* 891 F.2d 1007, 1010 (2d Cir.1989) (quoting *Roberts v. LaVallee,* 389 U.S. 40, 42, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967) (per curiam)).

All this is crystal clear.

### B. Fugitive Disentitlement Doctrine

The validity of state rules that permit or mandate the dismissal of appeals filed by fugitives is equally clear. In *Estelle v. Dorrough,* 420 U.S. 534, 537–39, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975) (per curiam), for example, after discussing the history of the fugitive disentitlement doctrine, the Supreme Court rejected a returned fugitive's equal protection challenge to a Texas statute that provided for automatic dismissal of pending appeals brought by fugitive felons who did not voluntarily surrender within ten days of escape.[7] *See id.* at 535, 95 S.Ct. 1173; *see also Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970) (per curiam) (finding "[n]o persuasive reason" to adjudi-

cate the merits of a criminal case after a convicted defendant's escape). In upholding the validity of the Texas statute, the *Estelle* Court, moreover, spoke approvingly of Texas's purposes in enacting the rule, namely to discourage escape, to encourage voluntary surrenders, and to promote efficiency in the state appeals process. *See Estelle,* 420 U.S. at 537, 95 S.Ct. 1173.

Similarly, and more recently, the Court rejected a due process challenge to Missouri's fugitive disentitlement doctrine. *See Goeke v. Branch,* 514 U.S. 115, 118–19, 115 S.Ct. 1275, 131 L.Ed.2d 152 (1995) (per curiam). In doing so, the *Goeke* Court rejected any characterization of *Evitts* that read due process to "require[ ] state courts to provide for appellate review where the would-be appellant has not satisfied reasonable preconditions on her right to appeal as a result of her own conduct." *Id.* at 120, 115 S.Ct. 1275. The Court then expressly framed obedience to state custody as a procedural precondition of appellate rights, noting that "*Evitts* turned on the right to effective assistance of counsel[, but] left intact the States' ability to conduct appeals in accordance with reasonable procedural rules." *Id.* (internal quotation marks omitted); *see also Estelle,* 420 U.S. at 538 n. 7, 95 S.Ct. 1173 (stating that "[t]he right of appeal from a judgment of conviction in both the federal and state systems is almost uniformly conditioned, for example, upon the filing of a notice of appeal within a prescribed time limit," and other procedural requirements that promote "orderly judicial procedure").[8]

---

7. This category excluded felons sentenced to death or life imprisonment, for whom state judges had the discretion, under certain circumstances, to reinstate the right to appeal. *See Estelle,* 420 U.S. at 535, 95 S.Ct. 1173.

8. The *Goeke* Court also made clear that its decision in *Ortega–Rodriguez v. United States,* 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d

581 (1993), did not call into doubt the States' ability to conduct appeals in accordance with reasonable procedural rules. In *Ortega–Rodriguez,* the Court held that, "absent some adverse effect of pre-appeal flight on the appellate process, 'the defendant's former fugitive status may well lack the kind of connection to the appellate process that would justify an

## C. The New York Court's Decision

■ We take for granted, therefore, that New York has a full right to establish fugitive disentitlement doctrines. For, as stated by the Fifth Circuit, clearly established federal law does not provide a "constitutional right to reinstatement of an appeal abandoned by escape." *Joensen v. Wainwright*, 615 F.2d 1077, 1080 (5th Cir. 1980). Moreover, New York is entitled to require that a "would-be appellant[ ] . . . satisf[y] reasonable preconditions on her right to appeal as a result of her own conduct," *Goeke*, 514 U.S. at 120, 115 S.Ct. 1275, by establishing documentary requirements and timely filing schedules. We cannot and would not stop New York from establishing such rules.

■ The key to the case before us, therefore, lies not in *whether* New York can have a fugitive disentitlement doctrine and hem it in with procedural requirements—of course it can—but in the fugitive disentitlement doctrine New York has chosen to have and how it has applied it in Taveras's case. New York does not have a mandatory, automatic, and permanent dismissal scheme of fugitive disentitlement, as do some other states. *See, e.g., Estelle*, 420 U.S. at 535, 95 S.Ct. 1173 (considering the application of a Texas statute mandating automatic dismissal of the appeals of fugitive felons unless they surrender or are recaptured within a specified length of time). In New York, courts have the *discretion* to dismiss fugitives' criminal appeals "on the * * * ground that 'the appellant is not presently available to obey the mandate of the Court in the event of an affirmance.'" *Skiff–Murray v. Murray*, 305 A.D.2d 751, 752–53, 760 N.Y.S.2d 564,

566 (3d Dep't 2003) ("Although no New York appellate court has adopted the fugitive disentitlement doctrine by name, the Appellate Division in each department and the Court of Appeals have dismissed fugitives' appeals' on the basis of their absence." (quoting *People v. Sullivan*, 28 N.Y.2d 900, 901, 322 N.Y.S.2d 730, 271 N.E.2d 561 (1971) and citing cases)).

■ Moreover, New York courts seemingly have full authority to hear the appeal of a fugitive defendant who has been returned to custody during the pendency of his appeal. *See, e.g., People v. Estrada*, 173 A.D.2d 555, 570 N.Y.S.2d 150 (2d Dep't 1991) (holding that dismissal of a returned fugitive's appeal "would be inappropriate," because he had become "amenable to the jurisdiction of this court" while his appeal was pending). Significantly, we have been unable to find any case other than the instant one—and the state has suggested none—in which the New York appellate courts have applied the fugitive dismissal doctrine to a *former* fugitive, let alone one in which the doctrine was applied to a former fugitive whose appeal was *still pending* before the court when he was returned to custody. Indeed, the New York appellate courts' authority to hear the appeal of a fugitive defendant plainly extends even to reinstating the appeal of a returned defendant whose appeal had originally been dismissed while he was a fugitive because he was a fugitive. *See, e.g., People v. Sullivan*, 29 N.Y.2d 552, 324 N.Y.S.2d 99, 272 N.E.2d 586 (1971) (reinstating and hearing the merits of a defendant's appeal that had been previously dismissed on fugitive disentitlement grounds after his return to custody).

appellate sanction of dismissal." ' The *Goeke* Court clarified that *Ortega–Rodriguez*, and a related line of prior precedent, had not suggested that "dismissal of a fugitive's appeal implicated constitutional principles." *Goeke*,

514 U.S. at 119, 115 S.Ct. 1275. Rather, the *Goeke* Court stated that its concerns in *Ortega–Rodriguez*, with respect to fugitive dismissal, had been rooted in the "supervisory power to administer the federal court system." *Id.*

New York law may therefore be described as follows: (a) defendants have a right to a first-tier appeal. *See* N.Y. CRIM. PROC. LAW § 450.10 (Consol.2006); *see also People v. Seaberg,* 74 N.Y.2d 1, 7, 543 N.Y.S.2d 968, 970, 541 N.E.2d 1022, 1024 (1989); (b) a fugitive defendant may, or may not, lose that right to appeal in the discretion of the court; (c) as a matter of practice such a right seems never, in the past, to have been lost when a fugitive was returned during the pendency of his appeal; and (d) even when such a right has been lost while the defendant is absent, it may be reinstated on the fugitive's return.

So viewed, and as found by the court below, whether to exercise discretion and dismiss an appeal on fugitive disentitlement grounds—at least when the fugitive is returned while his appeal is still pending—is a "threshold issue" to be decided in the disposition of a former fugitive's *first-tier appeal as of right. Taveras,* 388 F.Supp.2d at 271. For, as our Court has said, in New York, "[w]hen an appellant has been returned to the jurisdiction of the court before the appeal is dismissed, . . . he has not necessarily lost his rights; the per se dismissal rule does not apply." *Barker v. Jones,* 668 F.2d 154, 155 (2d Cir.1982) (considering the habeas petition of a long-term fugitive returned to New York state custody after the dismissal of his appeal on fugitive disentitlement grounds and finding that, in the particular circumstances before the court, a time lapse of significant duration, state court application of fugitive disentitlement principles, and the failure to surrender voluntarily can result in forfeiture or waiver of the right to habeas review).

Whether intentionally or by processing error, the New York Appellate Division did not deal with Taveras's direct appeal prior to his return to state custody. As a result, the Appellate Division had that appeal before it when Taveras sought appointment of counsel. At that time, the Appellate Division could have considered his appeal on the merits or dismissed it, at least nominally, in view of Taveras's past flight. The question before us therefore is simply whether Taveras was deprived of his constitutional *right to counsel* during the litigation of his pending appeal, including litigation of the threshold issue of whether his appeal should be dismissed on the basis of his past fugitive status.[9]

If New York provided for an automatic, irrevocable, and mandatory dismissal of appeals by fugitives, a right to counsel would not attach. (1) The question of dismissal would not then be an issue in an appeal to which a defendant had a statutory right, and the central holding of *Douglas* would not apply; and (2) neither of *Douglas*'s considerations would be met, first, because automatic dismissal would occur without regard to the merits of a defendant's claim, and second, because there would be no disadvantage to uncounselled fugitives, and hence no con-

---

**9.** In this respect we note that, as the state implicitly concedes, Taveras is not obliged to show that he was *prejudiced* by the denial of counsel or a trial transcript. *See Penson v. Ohio,* 488 U.S. 75, 87, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (holding that "[m]ere speculation that counsel would not have made a difference is no substitute for actual appellate advocacy, particularly when the court's speculation is itself unguided by the adversary process"). The Court emphasized that when a defendant is left without representation at the appellate stage, "the fundamental importance of the assistance of counsel" requires "the presumption of prejudice" when a defendant is denied counsel on appeal. *Id.* at 88, 109 S.Ct. 346; *see also Restrepo v. Kelly,* 178 F.3d 634, 641–42 (2d Cir.1999) (applying a presumption of prejudice where a habeas petitioner was denied direct appeal by his counsel's failure to file a notice of appeal).

cerns about indigent defendants being "ill equipped to represent themselves," *Halbert*, 125 S.Ct. at 2590. In contrast, since New York has determined—as a matter of its own doctrine and practice—that fugitive status need not preclude a direct appeal, the fugitive dismissal doctrine becomes, in New York, an issue to be decided in the disposition of a defendant's first-tier appeal as of right. The central holding of *Douglas*, therefore, applies and means that the state must afford the right to counsel to indigent fugitives.

Moreover, even were we to assume that this case, involving, as it does, a right to a first appeal that is subject to dismissal at the court's discretion, did not fit precisely within the central holding of *Douglas*, we would still conclude that *Douglas*'s rationale clearly governs because both of *Douglas*'s descriptive conditions are met. First, the New York Appellate Division did not tell us whether it considered the merits in deciding to dismiss Taveras's appeal on fugitive disentitlement grounds. *See supra* at 5 ("And respondent having moved for an order dismissing the appeal, Now, upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon, * * * the motion is granted and the appeal is dismissed."). Nevertheless, in light of the fact that New York appellate courts apparently have never—until the present case—applied the fugitive dismissal doctrine to a former fugitive whose appeal was still pending when he was returned to the jurisdiction of the court, we have every reason to believe that the merits of Taveras's appeal must have played some role in the dismissal of that appeal. Second, Taveras's appeal had not "once been presented by [appellate counsel] and passed upon by an appellate court," *Douglas*, 372 U.S. at 356, 83 S.Ct. 814; indeed, Taveras did not even have a trial transcript. He was, in other words, unmistakably "ill equipped" to represent himself.[10]

Whether one analyzes this question as a matter of procedural due process, ensuring that all defendants share a full and fair opportunity to avoid a court's discretionary dismissal of a first-tier appeal, or of equal protection, ensuring that the state does not differentiate among rich and poor fugitives, the same result follows. *See Halbert*, 125 S.Ct. at 2587; *Evitts*, 469 U.S. at 404–05, 105 S.Ct. 830.

The essence of the state's position, as aptly stated by the court below, is that "even where a former fugitive is before an appellate court with a pending appeal, Supreme Court case law mandating the appointment of appellate counsel does not apply as long as the fugitive disentitlement doctrine *permits* dismissal of that appeal." *Taveras*, 388 F.Supp.2d at 268 (emphasis added). The right to counsel, so firmly moored in our constitutional commitments to equal protection and due process, contains no such "*sub silentio* exception." *Id.* at 269. We therefore hold that the failure to appoint counsel, as Taveras timely sought, amounted to a violation of his well-established constitutional right to counsel.

## CONCLUSION

For the foregoing reasons, the decision of the court below is AFFIRMED. Taveras should be released from custody unless his direct appeal to the Appellate Division is reinstated and, assuming Taveras has satisfied the New York State courts as to his indigency, appellate counsel is appointed.

---

**10.** We note in passing that the concerns of the *Halbert* Court—the severe disadvantages faced by indigent defendants pursuing criminal appeals—are particularly strong in a case such as the present one, where it appears that the petitioner does not speak English. *See Halbert*, 125 S.Ct. at 2592–93.

152

Such acts should take place within 60 days of the entry of judgment in this matter. The New York courts remain free, *thereafter,* to consider whether dismissal of Taveras's appeal on grounds of his previous flight is, under New York law, appropriate.